IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00585-PAB-KMT

2701 MOUNTAIN GLEN CT, LLC, a Colorado limited liability company,

Plaintiff,

v.

CITY OF WOODLAND PARK, COLORADO,
DAVID BUTTERY, as an individual and in his official capacity as the City Manager of the City of Woodland Park, Colorado, and
SALLY RILEY, as an individual and in her official capacity as the Planning Director of the City of Woodland Park, Colorado

Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants' Amended Motion & Brief in Support of Summary Judgment [Docket No. 47]. The Court has subject matter jurisdiction under 28 U.S.C. § 1331. *See* Docket No. 1 at 2, ¶ 3.

## I. BACKGROUND[1]

For over a decade, plaintiff's principal, Garland McClung, has been operating an auto repair shop in Woodland Park, Colorado. Docket No. 1 at 2-3; Docket No. 47 at 2, ¶ 3. Plaintiff owns the property on which the shop is located. Docket No. 59 at 6-7, ¶¶ 3, 11. Because plaintiff's property is located on land zoned as a "Community Commercial District," plaintiff must obtain a permit from the City of Woodland Park –

[1]The following facts are undisputed unless otherwise indicated.

called a conditional use permit ("CUP") – to conduct business there. Docket No. 47 at 2, ¶ 4. The Woodland Park Municipal Code mandates that "[s]idewalk construction in the [Community Commercial District] shall be required as prescribed in Section 18.33.170." *Id.* at 3, ¶ 6. As relevant here, that section states:

> . . . sidewalks, curb and gutter shall be constructed along property boundaries adjacent to public streets by the proprietor of the business and/or property owner . . . Fees in lieu of sidewalk, curb and gutter construction may be considered by the City of Woodland Park city council to meet the requirements of this section. Said fees in lieu of shall be in an amount equal to the actual cost of construction of all required sidewalk, curb and gutter improvements as determined by the city engineer.

*Id.,* ¶ 7. Pursuant to section 18.33.170, property owners are responsible for constructing the sidewalk or paying the city fees to pay for its construction. *Id.* Sidewalks are installed on "[Woodland Park] property and not on the applicant's property." *Id.,* ¶ 8.

In connection with starting its business in 2005, plaintiff applied for a CUP, which was granted on the condition that it pay a fee so that Woodland Park could build a sidewalk, curb, and gutter along plaintiff's property. *Id.* at 4-6, ¶¶ 13, 16-17, 24. Plaintiff paid the $13,527 fee and the city council approved the CUP. *Id.* at 5-6, ¶¶ 16, 22-24. Woodland Park has yet to build the sidewalk, curb, or gutter pursuant to the 2005 CUP. Docket No. 60 at 5, ¶¶ K-L. Additionally, plaintiff had not taken any legal action against Woodland Park for the 2005 CUP until this litigation. Docket No. 47 at 12, ¶¶ 57, 61.

In 2014, plaintiff sought to expand its auto repair business to include car sales. Docket No. 47 at 6, ¶ 27. To do so, plaintiff bought the lot immediately adjacent to the

current automotive repair shop and applied for another CUP. *Id.* at 6, ¶¶ 27-28. On November 20, 2014, Woodland Park approved the CUP, Ordinance No. 1222, which required plaintiff to install a sidewalk adjacent to the new property. *Id.* at 9-10, ¶¶ 41, 43. In November 2016, after disagreements between the city and Mr. McClung over the cost of constructing the sidewalk, Woodland Park amended the CUP, through Ordinance No. 1290, to provide plaintiff with an option to either build the sidewalk itself or to pay a fee to Woodland Park to do the same. *Id.* at 10-11, ¶¶ 50-51.[2] Plaintiff has not paid the fee or built the sidewalk along the newly purchased lot. *Id.* at 11, ¶¶ 53, 55.

On March 9, 2018, plaintiff filed suit under 42 U.S.C. § 1983 against Woodland Park and city employees David Buttery and Sally Riley, alleging that the conditions placed on the various CUPs represent an unconstitutional monetary exaction in violation of the Takings Clause of the Fifth Amendment.[3] Docket No. 1 at 1, 10-11. Plaintiff contends that Woodland Park's CUP conditions "lack[] an essential nexus to a legitimate government purpose, and [are] not roughly proportional to any impact of [plaintiff's] development and use of its property."[4] Docket No. 59 at 2-3. Specifically,

[2] Although the parties dispute whether plaintiff knew that it always had the option to pay a fee in lieu rather than build the improvements itself, the parties agree that this option was explicitly added to the CUP in 2016. Docket No. 47 at 11, ¶ 51; Docket No. 52 at 7, ¶ 51.

[3] Plaintiff's claims against Mr. Buttery and Ms. Riley stem "solely" from their employment with Woodland Park. Docket No. 47 at 4, ¶ 12; Docket No. 52 at 2, ¶ 12. Mr. Buttery was the Director of Public Works/City Engineer in 2005 and the City Manager in 2014. Docket No. 47 at 4, ¶ 12. Ms. Riley was the City Planner in 2005 and Woodland Park's Planning Director in 2014. *Id.*

[4] Plaintiff no longer pursues a claim as to the 2005 CUP. Docket No. 59 at 3.

plaintiff argues that its property is "in a rural area with little to no pedestrian traffic," making the need for a sidewalk non-existent and, thus, meaning that there is no nexus between its development plans and a sidewalk and that the requirement of building a sidewalk is not roughly proportional to the effect of its development plans. *Id.* at 2-3; *see also* Docket No. 1 at 6-7, ¶¶ 33-35; Docket No. 52 at 2-4,13, ¶¶ 3, 15a, 15f, 30b, JJ. This is evident, plaintiff contends, by the lack of sidewalks "anywhere near" its property, Docket No. 59 at 2-3, and the lack of a "noticeable increase in pedestrian traffic on the roadway" from the existing shop. Docket No. 52 at 4, ¶ 30b. Defendants move for summary judgment, arguing that plaintiff's claim is barred by the statute of limitations and, even if it is not, fails on the merits. Docket No. 47 at 2.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Monetary Exactions

The Takings Clause of the Fifth Amendment states that private property shall not "be taken for public use, without just compensation." U.S. Const. amend V. It applies to federal governmental entities and, through the Fourteenth Amendment, to state and local governmental entities as well. *Chicago, B. & Q. R. Co v. City of Chicago*, 166 U.S. 226, 239-241 (1897). The prohibition against taking private property without just compensation has been extended to situations where a government

conditions the approval of a development project on the applicant dedicating a property interest to the governmental body or public at large – what is known as "exactions." *See Dolan v. City of Tigard*, 512 U.S. 374, 384-85 (1994); *Nollan v. Cali. Coastal Comm'n*, 483 U.S. 825, 837 (1987). While these types of conditions do not take property, "they [do] impermissibly burden the right not to have property taken without just compensation." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013). The Supreme Court has held that these sorts of "extortionate demands" also apply when the government requires citizens to expend money in exchange for development or permitting approval. *Id.* at 619.

*Nollan*, *Dolan*, and *Koontz* are the guideposts for the Court's analysis. In *Nollan*, the Supreme Court determined that some exactions were constitutionally cognizable under the Takings Clause. 483 U.S. at 834-38. There, the landowners applied for a permit from the California Coastal Commission ("Commission") to demolish their current beachfront home and build a new one, which would be larger than the previous structure. *Id.* at 828. The Commission was willing approve the permit on the condition that the landowners provided a public easement across their property. *Id.* The Supreme Court noted that "[h]ad California simply required . . . an easement . . . available to the public on a permanent basis . . . there would have been a taking." *Id.* at 831. But, because the permit approval was essentially a land-use regulation, it would not effect a taking so long as the regulation advanced a legitimate state interest and did not deny the landowners economically viable use of the land. *Id.* at 834.

The Commission offered several legitimate governmental interests, such as

"protecting the public's ability to see the beach" and "preventing congestion" on public beaches. *Id.* at 835. However, the Supreme Court reasoned that none of these purposes, even if legitimate, had an "essential nexus" to the easement. *Id.* at 836-37. It was "quite impossible to understand how a requirement that people already on the public beaches be able to walk across the [landowners'] property reduces any obstacles to viewing the beach created by the new house." *Id.* at 838. The permit condition therefore violated the Takings Clause. *Id.* at 841-42.

The Supreme Court elaborated on *Nollan* in *Dolan*, answering the question of whether all conditions with an essential nexus satisfy the strictures of the Takings Clause. In *Dolan*, a business owner wanted to expand her business and, to do so, she purchased a larger lot across the street from her current property. 512 U.S. at 379. That new property, however, was located in a 100-year flood plain. *Id.* The business owner applied for a permit to begin development; the city granted the permit on the condition that she dedicate part of her land as a public greenway to assist with storm drainage and another fifteen-foot strip as a pedestrian and bike path. *Id.* at 380, 393. The Supreme Court first looked to the essential nexus. *Id.* at 387. The *Dolan* court determined that such a nexus existed because there was a connection between the increased flooding that could result from development within the flood plain and the requirement to offset such flooding with a greenway. *Id.* Additionally, the pedestrian and bike path could theoretically reduce the increased congestion that could result from the new, larger store. *Id.* at 387-88.

However, the Supreme Court concluded that this nexus was not enough. There

must also be a "rough proportionality" between the condition and the effect of the development. *Id.* at 391 ("No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." (footnote omitted)). The Supreme Court did not fully answer whether the condition satisfied the rough proportionality requirement. *Id.* at 393-96. However, it did note that the city, on the record before the Supreme Court, had failed to demonstrate that a public, instead of a private, greenway was roughly proportional, or that the path would actually, rather than potentially, offset congestion. *Id.*

Finally, in *Koontz*, the Supreme Court expanded the essential nexus and rough proportionality test to situations in which a government does not demand that the landowner give the governmental entity a real property interest but, instead, demands that a permit seeker expend money to receive permit approval. 570 U.S. at 617. There, a landowner sought to develop land that was predominantly classified as wetlands. *Id.* at 600. The landowner applied for a permit from the relevant water district, which said it would grant it on one of two conditions: either the landowner reduce the size of the proposed development to one acre and grant a conservation easement on the remaining 13.9 acres, or build the development as proposed, but also "hire contractors to make improvements to District-owned land several miles away." *Id.* at 602.

The Supreme Court rejected the argument that asking the landowner to "spend money rather than give up an easement on his land" rendered the takings claim

incognizable. *Id.* at 611-13. Accepting such an argument, the *Koontz* court reasoned, would make it "very easy for land-use permitting officials to evade" *Nollan* and *Dolan* because officials "wishing to exact an easement could simply give the owner a choice of either surrendering an easement or making a payment equal to the easement's value." *Id.* at 612. Because fees in lieu are "functionally equivalent to other types of land use exactions" and because demands for money "operate upon . . . an identified property interest," the Supreme Court held that monetary exactions – defined as a government demand for a citizen to expend money – must also satisfy *Nollan* and *Dolan*. *Id.* at 612-13.

Thus, *Nollan*, *Dolan*, and *Koontz* require that, when a governmental entity places a condition – real property or otherwise – on an identifiable property interest, there must be an "essential nexus" between the condition and the development, as well as "rough proportionality" between the effect of the development and the condition. *Id.*; *Dolan*, 512 U.S. at 386, 391.

Woodland Park's CUP sidewalk condition falls within the scope of *Koontz*, *Nollan*, and *Dolan*. Plaintiff's approval of his permit was conditioned on expending funds to build public improvements, which is what occurred in *Koontz*. 570 U.S. at 607-13. That is not to say that the sidewalk demand is necessarily unconstitutional. But, the conditions placed on plaintiff's permit approval are the types of conditions that Takings Clause case law scrutinizes. Nonetheless, plaintiff's suit must still be timely brought. The Court must therefore determine whether plaintiff's claim is barred by the statute of limitations.

**B. Statute of Limitations**

In order for plaintiff to make a viable Takings Clause claim, the claim must be filed within the appropriate limitations period. The fact that such claims are constitutionally rooted makes no difference. *See Block v. N.D. ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 292 (1983) ("A constitutional claim can become time-barred just as any other claim can. Nothing in the Constitution requires otherwise.") (citations omitted).

"State statutes of limitations applicable to general personal injury claims supply the limitations period for § 1983 claims." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999) (citations omitted). In Colorado, the statute of limitations for personal injury claims is "two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (citing *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993)). While Colorado law supplies the appropriate statute of limitations for § 1983 claims, federal law controls the accrual date. *Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (citing *Wallace v. Cato*, 549 U.S. 384, 387 (2007)). A claim under § 1983 accrues when plaintiff "had 'a complete and present cause of action'; that is, when [it] could have filed suit and obtained relief." *Id.* (citing *Wallace*, 549 U.S. at 388). Therefore, plaintiff's claim accrued when it "knew or had reason to know" that defendants' actions violated its constitutional rights. *Id.* The Court must thus "identify the constitutional violation and locate it in time." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998).

The Court finds that plaintiff's claim accrued in 2014, when Woodland Park first

placed conditions on plaintiff's permit approval for the adjacent lot. To "identify the constitutional violation," the Court must determine when Woodland Park placed a condition on plaintiff's development that potentially violated *Nollan* and *Dolan*. *Enid*, 149 F.3d at 1154. *Nollan* and *Dolan* ask whether the condition has an essential nexus to the proposed development and whether the condition has a rough proportionality to the effect of the proposed development. *Dolan*, 512 U.S. at 386, 391. The 2014 CUP conditioned the approval of the development of plaintiff's adjacent property on the construction of a sidewalk. Docket No. 47 at 9-10, ¶¶ 41, 43. This was the point in time, *Enid*, 149 F.3d at 1154, that plaintiff "could have filed suit and obtained relief," *Vasquez*, 882 F.3d at 1276 (citation omitted), because it was at this point that a condition was placed on an identifiable property interest. *See Koontz*, 570 U.S. at 612-13. Once Woodland Park made a demand in connection with plaintiff's permit approval, the demand had to meet the *Nollan*/*Dolan* test. *Id.* at 619 ("[A] government's demand for property from a land-use permit applicant must satisfy the requirements of *Nollan* and *Dolan* . . . even when its demand is for money."). Additionally, plaintiff "knew or had reason to know," *Vasquez*, 882 F.3d at 1276, that the condition potentially violated *Nollan* and *Dolan* because plaintiff's entire claim revolves around his property being "in a rural area with little to no pedestrian traffic" and therefore not needing a sidewalk. Docket No. 59 at 2-3. The rural condition of his property was evident in 2014; plaintiff has not asserted that the property became more rural in 2016.

Therefore, the statute of limitations began to run when the sidewalk condition was placed on plaintiff's permit approval, which was November 20, 2014. Docket No.

47 at 10, ¶ 43. Plaintiff filed suit on March 9, 2018 more than two years after the claim accrued. *See* Docket No. 1. Plaintiff's claim is thus barred by the statute of limitations. *See Fogle*, 435 F.3d at 1258.

In plaintiff's response to defendants' summary judgment motion, plaintiff argues that the statute of limitations did not accrue until 2016, when the option to pay a fee in lieu, rather than build the sidewalk, was added to the 2014 CUP. Docket No. 52 at 15-16. Plaintiff contends that this amendment is "central" to its claim because it "substantively changed the 2014 Ordinance." *Id.* at 16. In other words, plaintiff argues that it is only the fee in lieu that makes the sidewalk condition unconstitutional, not the sidewalk condition itself.

Plaintiff's attempt to draw a constitutional distinction between having to pay a fee in lieu and having to build the sidewalk itself is not persuasive. Rather, *Koontz* applies when a citizen is asked to spend money to satisfy a permitting condition, whether or not the funds are paid from citizen to contractor, or from citizen to government to contractor. *See Koontz*, 570 U.S. at 602. *Koontz* involved a municipality that required a landowner to "hire contractors to make improvements," as opposed to being required to pay the city a fee in lieu to hire contractors. *Id.* More importantly, however, is that *Nollan* and *Dolan*, and thus *Koontz*, look to the nexus and proportionality between the *condition* and the development. *See Dolan*, 512 U.S. at 386, 391. *Koontz* effectively extinguished any constitutional significance on how a certain unconstitutional condition is effectuated – whether through a real property interest, monetary expenditure, or fee in lieu – placing the focus on the condition's relationship to the development. *See* 570

U.S. at 614 ("The fulcrum this case turns on is the direct link between the government's demand and a specific parcel of real property." (footnote omitted)). Plaintiff concedes as much in its supplemental brief, agreeing that *Koontz* applies when a citizen is asked to spend money herself to satisfy a permitting condition rather than pay fees to a governmental entity to do the same. Docket No. 83 at 1.

Realizing that *Koontz* does not turn on the method by which the condition is satisfied, plaintiff changes course and, in its supplemental brief, argues that the claim could have only accrued in 2016, when plaintiff knew that defendant had "no intention to fulfill its obligation" under the CUP. Docket 83 at 5. But, as discussed above, *Nollan* and *Dolan* focus on the essential nexus and rough proportionality of the condition and the effect on the development. Plaintiff cannot argue that a sidewalk lacks a nexus and proportionality to its development because its property is "in a rural area with little to no pedestrian traffic," Docket No 59 at 2-3, while simultaneously arguing that Woodland Park's alleged intentions are what actually make the sidewalk lack a nexus and proportionality. Even if plaintiff intended to build the sidewalk itself in 2014, that would not change whether the sidewalk condition violated *Nollan* and *Dolan*: either the sidewalk has an essential nexus and rough proportionality to plaintiff's development or it does not. Based on the allegedly rural condition of the area in 2014, plaintiff knew, or had reason to know, that it had a Takings Clause claim, and the statute of limitations began to run when Woodland Park issued the 2014 CUP. *See Vasquez*, 882 F.3d at 1276. Plaintiff cannot use the intentions of Woodland Park to escape the statute of limitations.

**C. Tolling**

State law governs tolling issues "unless the tolling rules are inconsistent with federal law or with the policy which federal law seeks to implement." *Baker v. Bd. of Regents*, 991 F.2d 628, 632-33 (10th Cir. 1993). State law therefore controls tolling of § 1983 claims. *See Alexander v. Oklahoma*, 382 F.3d 1205, 1217 (10th Cir. 2004).

In Colorado, tolling is limited "to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). This is a difficult standard to meet. *See Braxton v. Zavaras*, 614 F.3d 1156, 1161 (10th Cir. 2010) (noting that, as of 2010, "[t]he Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling").

Plaintiff's claim does not meet this standard. There was neither "fraudulent concealment" nor actions by defendants that "in anyway impede[d] [plaintiff] from bringing an action against them." *Hartman*, 911 P.2d at 1097. Plaintiff argues that defendants concealed the fact that there was no intention to build a sidewalk. Docket No. 52 at 19-20. But that misses the point. The question is whether defendants prevented plaintiff from discovering that the sidewalk failed the essential nexus and rough proportionality test, not whether defendants hid their true intentions. Defendants' alleged concealment of their lack of a desire to build a sidewalk did not conceal the nexus and proportionality of the sidewalk to the impact of plaintiff's car sales business. Defendants took no action to prevent plaintiff from filing its claim. And plaintiff did not

make a "good faith effort[]" to pursue the claim, as is evident by its tardiness in making complaints about the 2005 CUP and the 2014 CUP. *Hartman*, 911 P.2d at 1097.

Therefore, plaintiff's claim is not subject to tolling.

**D. The Continuing Violations Doctrine**

The Tenth Circuit has not applied the continuing violations doctrine to cases arising under § 1983. *See Vasquez*, 882 F.3d at 1277 ("[T]his court has not yet decided whether [the doctrine] should apply to § 1983 claims."). However, even if the continuing violations doctrine applied here, it would not save plaintiff's claim.

"The continuing violation 'doctrine is triggered by continuing unlawful *acts* but not by continuing damages from the *initial* violation." *Id.* (emphasis added) (citations omitted). It only applies "when a particular defendant allegedly committed wrongful acts within, as well as outside, the limitations period." *Id.* Defendants have only committed one allegedly wrongful act: the conditioning of plaintiff's permit on the construction of a sidewalk. The 2016 CUP modified the method by which that sidewalk would be built. It was not a separate unlawful act. Defendants have not committed multiple wrongful acts that would justify the application of the continuing violations doctrine.[5]

[5] Plaintiff filed a Motion for Leave to File Sur-Reply to Oppose Woodland Park's Summary-Judgment Motion [Docket No. 70]. Granting leave to file a surreply is part of the "supervision of litigation" and thus falls within the discretion of the district court. *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191-92 (10th Cir. 2006). However, the Court must allow a non-movant to file a surreply to respond to any new arguments in the moving party's reply. *Id.* ("If the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to those new materials." (citations omitted)). Plaintiff contends that defendants raised a new qualified immunity argument and misrepresents plaintiff's claim. Docket No. 70 at 2, ¶¶ 2a-b. The Court, however, finds that defendants have not introduced a new argument or material that requires the Court to allow plaintiff to respond.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Amended Motion & Brief in Support of Summary Judgment [Docket No. 47] is **GRANTED**. It is further

**ORDERED** that plaintiff's Motion for Leave to File Sur-Reply to Oppose Woodland Park's Summary-Judgment Motion [Docket No. 70] is **DENIED**. It is further

**ORDERED** that judgment shall enter for defendants and against plaintiff on all claims. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED January 8, 2020.

BY THE COURT:

S/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge